**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MARYLAND**

**Baltimore Division**

| | |
|---|---|
| ANTIETAM BATTLEFIELD KOA, ) | |
| and ) | |
| ADVENTURE PARK USA, LLC, ) | |
| and ) | |
| SSG JASON ANDERSON, U.S.A. (ret.), ) | |
| and ) | |
| LANCE CORPORAL CHRISTOPHER ) | Civil No._____ |
| REPOGLE, U.S.M.C. (former) ) | |
| and ) | |
| REV. CHRISTOPHER OGNE, pastor of ) | |
| *Lutheran Church of Our Savior*, ) | |
| and, ) | |
| REV. JAMES WICKHAM, ) | |
| REV. FREDRICK CAUDLE, ) | |
| REV. PAUL GOODWIN, ) | |
| REV. JOHN SEAY, ) | |
| REV. GARY POMRENKE, ) | |
| REV. GARY COX, ) | |
| REV. STEVEN DIXON, ) | |
| REV. JOHNNY HUDSON, ) | |
| DAVID SERENDA, DEACON, ) | |
| DELEGATE WARREN MILLER, ) | |
| DELEGATE DAN COX, ) | |
| DELEGATE NEIL PARROTT, ) | |
| and ) | |
| REOPEN MARYLAND, LLC, ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| LAWRENCE J. HOGAN, in his official ) | |
| capacity as Governor of the State of Maryland, ) | |
| ) | |
| And ) | |
| ) | |
| ROBERT J. NEALL, in his official capacity as ) | |
| Secretary of Md. Health Department, ) | |
| ) | |
| And ) | |
| ) | |
| FRANCES B. PHILLIPS, in her official capacity as ) | |
| Dpt. Sec. for Public Health Services, ) | |
| ) | |
| And ) | |

WOODROW W. JONES, III, in his official                    )
capacity as Maryland State Police Superintendent,         )
                                                          )
Serve On:                                                 )
ATTORNEY GENERAL BRIAN FROSH, 200 St.                     )
Paul Place, Baltimore, Md 21202,                          )
                        Defendants.                        )
                                                          )
                                                          )
                                                          )
                                                          )

---

## COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DAMAGES

For its Complaint against Defendants, LAWRENCE J. HOGAN, in his official capacity as Governor of the State of Maryland, Robert J. Neall, Frances B. Phillips, and Woodrow W. Jones, III ("Governor Hogan," "delegated officials" or the "State"), Plaintiffs, Antietam Battlefield KOA, Staff Sergeant Jason Anderson (USA, ret.), Lance Corporal Christopher Repogle (USMC, ret.), and Rev. Christopher Ogne, pastor of *Lutheran Church of Our Savior*, of Bryans Road, Maryland ("Rev. Ogne"), et al, allege and aver as follows:

### URGENCIES JUSTIFYING TEMPORARY RESTRAINING ORDER

1.      Delegate Dan Cox, a sworn Member of the House of Delegates of the State of Maryland, District 4, including Frederick and Carroll Counties, was scheduled to speak at a political event on Saturday, May 2, 2020, protesting the Governor's Executive Orders to stay-at-home, and to only enter into business and religious worship which he deems essential commerce. Delegate Cox was then warned by a senior law enforcement official that the "Governor has his sights on you" and that if I attend, ride along and speak at the Reopen Rally, I would potentially be arrested because certain individuals had indicated they may stop cars "and arrest you." Delegate

Cox then confirmed with the Governor's senior advisor Andrew Cassilly and Chief Counsel Mike Pedone that if Del. Cox attends and speaks at the Reopen Rally he may be arrested, with the response referring Del. Cox to the Governor's March 17th Executive Order forbidding "large gatherings" and exposing Delegate Cox to criminal sanctions of one year in jail and a $5000.00 fine for exercising his duty of speaking with the public as a Maryland State Legislator concerning any matter of concern including but not limited to matters of public policy that are immediately and imminently threatened by the Governor's *ultra vires* Orders.  Del. Cox requests immediate relief permitting him to leave his home, speak and attend a political rally in Maryland in his political district and throughout Maryland protesting the Governor's Executive Orders under the alleged on-going Catastrophic Health pandemic the Governor states has and is still occurring, which he lawfully represents as an equal member of government's three co-equal branches.  Del. Coxes' Affidavit is attached hereto as Exhibit A.   Attorney General Bill Barr has filed a memorandum with the US Attorney's offices stating that "the First Amendment and federal statutory law…forbids…discrimination against disfavored speech and undue interference with the national economy.  And that no state may "cross[] the line…into an overbearing infringement of constitutional and statutory protections…". Exhibit A-1.

2.       In its Prayer for Relief, *infra*, and in the contemporaneously filed Motion for Temporary Restraining Order (TRO), Plaintiff Antietam Battlefield Kampgrounds of America seeks a TRO restraining enforcement against them of the various Catastrophic Health Emergency Proclamations and Executive Orders thereunder issued by Governor Hogan and other State officials purporting to prohibit interstate commerce, forcing indefinite, statutorily *ultra vires* lock- downs in homes, and preventing the business from permitting reasonable use of grounds for living, camping and recreation at the campground.  The criminal sanctions threatened by the Defendants for failure to comply are causing the deprivation and loss of property of approximately $50,000/a

month plus loss of use of value of real property, and constitutionally protected rights including the right to not have property taken by the Governor or State under the 5th Amendment and related Md Declaration of Rights, the right to travel, assemble and to recreate, and to enter into and participate in interstate commerce under the full protection of the United States Constitution's guarantees under the Commerce Clause.  Plaintiff Antietam Battlefield KOA's affidavit is attached hereto as Exhibit B.

3.      In its Prayer for Relief, *infra*, and in the contemporaneously filed Motion for Temporary Restraining Order (TRO), Plaintiff Adventure Park USA, LLC seeks a TRO restraining enforcement against them of the various Catastrophic Health Emergency Proclamations and Executive Orders thereunder issued by Governor Hogan and other State officials purporting to prohibit interstate commerce, forcing indefinite, statutorily *ultra vires* lock-downs in homes, and preventing the business from permitting reasonable use of grounds for commerce and recreation. The criminal sanctions threatened by the Defendants for failure to comply are causing the deprivation and loss of property of approximately $700,000 during the Spring season, plus loss of use of value of real property, and constitutionally protected rights including the right to not have property taken by the Governor or State under the 5th Amendment and related Md Declaration of Rights, the right to travel, assemble and to recreate, and to enter into and participate in interstate commerce under the full protection of the United States Constitution's guarantees under the Commerce Clause.  Plaintiff Adventure Park USA's affidavit is attached hereto as Exhibit C.

4.      In his Prayer for Relief, *infra*, and in the contemporaneously filed Motion for Temporary Restraining Order (TRO), Plaintiff Staff Sergeant Jason Anderson seeks a TRO restraining enforcement against them of the various Catastrophic Health Emergency Proclamations and Executive Orders thereunder issued by Governor Hogan and other State officials purporting to prohibit interstate commerce, forcing indefinite, statutorily *ultra vires* lock-downs in homes,

and preventing him from going about in public and accessing recreation and business. The criminal sanctions threatened by the Defendants for failure to comply are causing severe deprivation of his rights. He objects to his loss of the right to travel, worship, assemble and to recreate, and to enter into and participate in interstate commerce under the full protection of the United States Constitution's guarantees under the Commerce Clause without the criminal penalty for failure to cover his face, which reminds him of the battlefield in Iraq and which as an American he refuses to do under threat of criminal law since such threat signifies a conquered person no different than enemies, but SSG Anderson is a United States citizen. Plaintiff SSG Anderson's affidavit is attached hereto as Exhibit D.

5.      In his Prayer for Relief, *infra*, and in the contemporaneously filed Motion for Temporary Restraining Order (TRO), Plaintiff Lance Corporal Christopher Repogle seeks a TRO restraining enforcement against them of the various Catastrophic Health Emergency Proclamations and Executive Orders thereunder issued by Governor Hogan and other State officials purporting to prohibit interstate commerce, forcing indefinite, statutorily *ultra vires* lock-downs in homes, and preventing him from going about in public and accessing recreation and business. The criminal sanctions threatened by the Defendants for failure to comply are causing severe deprivation of his rights. He objects to his loss of the right to travel, worship, assemble and to recreate, and to enter into and participate in interstate commerce under the full protection of the United States Constitution's guarantees under the Commerce Clause without the criminal penalty for failure to cover his face, which reminds him of the battlefield in Iraq and which as an American he refuses to do under threat of criminal law since such threat signifies a conquered person no different than enemies, but Lance Corporal Repogle is a United States citizen. Plaintiff LCPL Repogle's affidavit is attached hereto as Exhibit E.

6.      In their Prayer for Relief, *infra*, and in the contemporaneously filed Motion for

Temporary Restraining Order (TRO), Plaintiff Reverends Christopher Ogne and many others seek a TRO restraining enforcement against them of the various Catastrophic Health Emergency Proclamations and Executive Orders thereunder issued by Governor Hogan and other State officials purporting to prohibit Plaintiffs and their congregations, on pain of criminal sanctions, from gathering for worship services of more than 10 people, regardless of whether Plaintiffs and their congregations meet or exceed the social distancing and hygiene guidelines. The Governor disparately and discriminatorily allows himself, at his weekly gatherings of press conferences, to exceed the 10-person limit and disregard the mask and social distancing mandates for attendees at his gatherings.  The State further disparately and discriminately allows so-called "essential" commercial and non-religious entities (*e.g.*, beer, wine, and liquor stores, warehouse clubs, and 'big box' and 'supercenter' stores) to accommodate large crowds and masses of persons without scrutiny or numerical limit. A primary mandate of Scripture for the "church," which actually means "assembly," is to attend the sick – not merely virtually or in prayer, but personally side by side. Furthermore, the pastors are prevented from attending weddings and funerals in-person and as such their ministry is entirely supplanted unlawfully by the Governor in a continuing and on-going harm. Plaintiff Reverends Chris Ogne and additional pastor affidavits are attached hereto as Exhibit F, 1 through 10.

7.    As shown in the verified allegations below, Governor Hogan's Proclamations of Catastrophic Health Emergency Powers and Executive Orders relating to COVID-19 have been interpreted, applied, and enforced, including against pastors in Maryland, such that Maryland State Police officers in the State of Maryland have visited Maryland churches, such as these Plaintiff pastors, and threatened to impose **criminal sanctions against religious gatherings of any kind, even though these churches were engaged in First Amendment protected activity, were duly operating social welfare and food bank services, and at their worship services were**

**practicing reasonable and determinable social hygiene and distancing, and were exceeding government CDC and international WHO recommendations**.

8.      At around the same time as Governor Hogan's Executive Orders surrounding COVID-19 were being used to threaten criminal sanctions on Plaintiff pastors, officials in other jurisdictions had similarly threatened to impose criminal sanctions on other religious gatherings. In Louisville, Kentucky, for example, the government threatened to use police to impose criminal sanctions on those individuals found in violation of similar COVID-19 orders and threatened to impose various sanctions on individuals found in violation of such orders. The United States District Court for the Western District of Kentucky found that the mere threat of such criminal sanction warranted a TRO. *See On Fire Christian Center, Inc. v. Fischer*, No. 3:20-cv-264-JRW, 2020 WL 1820249 (W.D. Ky. Apr. 11, 2020). The *On Fire* TRO enjoined the Mayor of Louisville from "**enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with any prohibition on drive-in church services at On Fire**." *Id.* at *1 (emphasis added).

9.      In addition, officials in the State of Maryland threatened to impose criminal sanctions on Plaintiff pastors, and each and every congregant, member and/or attendee who dared visit their Church services on Easter Sunday or any other worship service held while Governor Hogan's orders are in effect.

10.      In fact, the Maryland State Police—acting under the direction of Governor Hogan's orders—have publicly declared that they would enforce the Governor's orders by leaving threatening pamphlets on church door steps, and have threatened to impose criminal sanctions on those found in violation of them.

11.      Additionally, the Governor of Kansas had imposed a virtually identical restriction on religious gatherings in Kansas, stating that "gatherings" of more than 10 individuals are

prohibited, including religious gatherings. On April 18, 2020, the United States District for the District of Kansas issued a TRO enjoining Kansas officials from enforcing its discriminatory prohibition on religious gatherings and required the government to treat "religious" worship services the same as other similar gatherings that are permitted. *See First Baptist Church. v. Kelly*, No. 20-1102-JWB, 2020 WL 1910021, *6–7 (D. Kan. Apr. 18, 2020) [hereinafter *First Baptist*]. The *First Baptist* TRO specifically stated that the government's disparate treatment of religious gatherings was a violation of the Free Exercise Clause because it showed that "**religious activities were specifically targeted for more onerous restrictions than comparable secular activities**," and that the churches had shown irreparable harm because they would "be prevented from gathering for worship at their churches" during the pendency of the executive order. *Id.* at *7–8 (emphasis added).

12.     In discussing the Kansas orders—which imposed a 10-person limit on in-person gatherings just as the Governor Hogan orders here—the court said that specifically singling out religious gatherings for disparate treatment while permitting other non-religious activities "show[s] that these executive orders expressly target religious gatherings on a broad scale and are, therefore, not facially neutral," *First Baptist*, 2020 WL 1910021, at *7, and—much like here—"churches and religious activities appear to have been singled out among essential functions for stricter treatment. **It appears to be the only essential function whose core purpose—association for the purpose of worship—had been basically eliminated**." *Id.* (emphasis added). Thus, the court found that a TRO was necessary and that Kansas should be enjoined from enforcing its orders' disparate terms against churches. Indeed, "**it goes without saying that the government could not lawfully expressly prohibit individuals from meeting together for religious services**." *Id.* at *6 (emphasis added).

13.     Plaintiffs' congregants and members were also threatened with criminal sanctions and

penalties if, at any time, the number of individuals attending worship services with Plaintiffs at church exceeded 10 individuals, and regardless of whether social distancing, enhanced sanitization, and personal hygiene practices were followed. Because of the government threat of criminal sanction, Plaintiffs were forced not to host services on Easter Sunday, its most treasured day in Christianity.

14.     The Governor has purported to become bishopric and pastor to every church in Maryland, by deciding when, where and how each church shall worship God.  This includes his statements at press conferences that "I will decide when churches can meet, and it will begin with outdoor services some-time next month (May) likely, and then maybe later [by fall] allow for more indoor services to begin with social distancing" or similar edicts (press conference, Friday, April 24, 2020).  These proclamations are each attended with the Governor's threat of criminal arrest and up to one year in jail and a $5000.00 fine to each pastor and congregant or member or attendee of any religious service.

15.     The Governor has further directed all pastors, priests, churches and congregations to host online services, drive-thru, drive-in, and/or parking lot services. Plaintiffs' congregations are without the resources or equipment to broadcast their worship services online or conduct parking lot or drive-in services. Moreover, even if Plaintiffs had such capabilities, many of the congregants and members they serve do not necessarily have the resources to watch worship services over the Internet.  Additionally, it is a tenet of the faith to meet in person and to have the pastor be the under-shepherd, elder and/or local bishop of the church, not the Governor.  To that end, obeying Holy Scripture's commands to assemble together weekly and to do so "even more as we see the Day approaching" is a command that enables the worship and obedience of God with their church family, which is a natural and constitutionally protected right that no government may restrict, particularly under the First and Fourteenth Amendments of the United States Constitution

and the Maryland Declaration of Rights arts. 2, 3, 5, 8, 9, 16, 24, 36, 40 and 44.

16.     Absent emergency relief from this Court, Plaintiffs campground, citizen soldier and Marine, State Delegates and pastors, and all of their church congregants, members and/or attendees will suffer immediate and irreparable injury from the threat of criminal prosecution for the mere act of engaging in the office of the Legislative Branch of government under the Constitutions of the United States and of Maryland Free speech, right to redress grievances, right to assemble, right to enter into commerce to feed one's family and work, and the free exercise of religion and going to church. **Indeed, if Plaintiff pastors, or their congregants, members or attendees do not worship as Governor Hogan has prescribed as orthodox in a worship service, they risk becoming criminals in the State of Maryland.** A temporary restraining should issue.

## <u>INTRODUCTION</u>

17.     A great object of our Union has been to uniformly advance and protect both the personal rights of individuals and of commerce, while not hindering the states from advancing those same rights at equal or greater pace.  The object has never been to permit a Governor to make a "neighbor's" rights or interests in health superior to the People's or even to another citizen's natural and inalienable rights.  The problem in Maryland is that Governor Hogan has done the reverse, even after being repeatedly petitioned to limit his power.  His defense has been circular under color of law: that his alleged acting in preserving "life" satisfies his refusal to protect citizens' liberty and happiness.[1]  However, rather than a careful balancing of liberties and natural rights of all, Governor Hogan has disregarded those persons' rights he deems are not "essential", a pattern and practice already found unlawful in decades of Supreme Court case law forbidding abuse of position by government officials when acting under color of law.[2]

---

[1] Gov. Hogan press conference, 4/29/2020.
[2] "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to

18.     Under his Proclamations of Catastrophic Health Emergency Powers and Executive Orders thereunder[3], Governor Hogan has taken a unilateral view of personal, religious and commerce powers, at a detriment to not only the Union as a whole, in his role as Chair with the National Governor's Association which he has used to "push" the President of the United States and the nation's 49 other state governors, but also in regression of the Union's preservation of substantive and procedural due process and natural rights of all Marylanders.

19.     Because of the unprecedented nature of the 2019 novel coronavirus disease (COVID-19) some may find it "tempting to hold that First Amendment rights should acquiesce to national security in this instance." *Tobey v. Jones*, 706 F.3d 379, 393 (4th Cir. 2013).

20.     When the great American experiment was first implemented, our revered Founders took pains to note that the Constitution—and all of the rights it recognized and enshrined—was instituted "in order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defense, promote the general Welfare, and **secure the Blessings of Liberty to ourselves and our Posterity**." U.S. Const. Pmbl. (emphasis added). To this very day, "we continue to strive toward '[that] more perfect union.'" *Smith v. City of New Smyrna Beach*, No. 6:110cv01110-Orl-37KRS, 2013 WL 5230659, *1 (M.D. Fla. Sept. 16, 2013). That work is not easy, and governments acting in good faith can and sometimes do miss the mark. This is such a case.

21.     During times of national crisis, such as the current uncertainty arising from COVID-19, "the fog of public excitement obscures the ancient landmarks set up in our Bill of Rights." *American Communist Ass'n, C.I.O. v. Douds*, 339 U.S. 382, 453 (1950) (Black, J.,

---

him by the State. See *Monroe v. Pape*, 365 U.S., at 172, 81 S.Ct., at 476. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. See, e.g., *Parratt v. Taylor*, 451 U.S., at 535-536, 101 S.Ct., at 1913; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605-1606, 26 L.Ed.2d 142 (1970). See also *Flagg Bros., Inc. v. Brooks*, 436 U.S., at 157, n. 5, 98 S.Ct., at 1734, n. 5." *West v. Atkins*, 487 U.S. 42, 49-50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

[3] Available (over 37 of them) at https://governor.maryland.gov/covid-19-pandemic-orders-and-guidance/ (accessed 5/2/20).

dissenting). But, where the fog of public excitement is at its apex, "the more imperative is the need to preserve inviolate the constitutional rights of free speech, free press and free assembly." *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937).

22.     It is axiomatic that our natural rights are especially most powerful during times of crisis and uncertainty. Indeed, "[t]imes of crisis take the truest measure of our commitment to constitutional values. Constitutional values are only as strong as our willingness to reaffirm them when they seem most costly to bear." *Hartness v. Bush*, 919 F.2d 170, 181 (D.C. Cir. 1990) (Edwards, J., dissenting).   We are not ignorant of the fact that, "[i]f the provisions of the Constitution be not upheld when they pinch as well as when they comfort, they may as well be discarded." *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 483 (1934) (Sutherland, J., dissenting).

## PARTIES

23.     Plaintiff, Antietam Battlefield KOA ("Antietam"), located at 11759 Snug Harbor Lane, Williamsport, MD 21795 is a campground and recreation business lawfully operating in interstate commerce and, prior to March 30, 2020, open to the public near the historic Civil War battlefield at Antietam, Maryland. It is a corporation duly formed and operating in the State of Maryland, near the borders of and along some of the busiest interstate highways going through Maryland, Virginia, West Virginia, and Pennsylvania.  Antietam has been harmed and is currently being harmed by Governor Hogan's noon March 30th, 2020 Executive Order immediately shutting down campgrounds under paragraph V.f.i.8 of Executive Order No. 20-03-30-01. Antietam, and the Durham family including husband, wife, daughter, son-in-law, and three grand-children earn their entire living from working this business.  The Governor's Orders have caused the Durham family and Antietam KOA to face likely bankruptcy and permanent closure.

24.     Plaintiff Adventure Park USA, LLC ("Adventure Park"), located on the Interstate

70 outside New Market, Maryland in Frederick County, Maryland is closed by edict of the Governor and will lose $700,000 in receipts during the Spring season.  It is a duly formed corporation operating in the State of Maryland primarily serving an age-group and clientele which is not impacted or endangered in by COVID-19 in any scientific significance.  Adventure Park has been harmed and is currently being harmed by Governor Hogan's Orders closing public places of entertainment and recreation.  It is a family-owned business and will likely face bankruptcy if they are not opened immediately this month of May 2020 with all outdoor and indoor recreation opportunities, and will thus be forced into a tax sale as already threatened this year by County Executive Jan Gardner.  This month Adventure Park had to take out a $150,000 loan to prevent a tax sale by Jan Gardner during the COVID-19 pandemic.

25.    Plaintiff SSG Jason Anderson, U.S. Army, retired, a veteran of war in Iraq, having served several tours of duty from 1998 through my being wounded in action in 2008, has been prevented by the Governor's executive orders from obtaining needed physical therapy for his battle wounds, has caused him increased PTSD because of the order to wear face masks, and has caused great emotional pain and suffering by the orders to remain inside his home like a captured enemy combatant.

26.    Plaintiff Lance Corporal Christopher Repogle, U.S.M.C., retired, is a veteran of war in Iraq serving two tours of duty from 2004 to 2007.  He is suffering depravation of rights.

27.    Plaintiff Delegate Daniel L. Cox is a state delegate for District 4, Frederick and Carroll Counties of Maryland and is suffering depravation of his free speech and assembly rights.

28.    Plaintiff Delegate Warren Miller is a state delegate for Howard and Carroll Counties of Maryland.

29.    .

30.     Plaintiff Delegate Neil Parrott is a state delegate for Washington County, Maryland.

31.     Plaintiff Rev. Christopher Ogne, pastor of Lutheran Church of the Savior, in Bryans Road, Maryland, is suffering ongoing harm and deprivation of his free speech, religious and assembly rights in violation of the First and Fourteenth Amendments.

32.     Plaintiff Rev. James Wickham is a pastor in Maryland and is suffering ongoing harm and deprivation of his free speech, religious and assembly rights in violation of the First and Fourteenth Amendments.

33.     Plaintiff Rev. Fredrick Caudle is a pastor in Maryland and is suffering ongoing harm and deprivation of his free speech, religious and assembly rights in violation of the First and Fourteenth Amendments.

34.     Plaintiff Rev. Paul Goodwin is a pastor in Maryland and is suffering ongoing harm and deprivation of his free speech, religious and assembly rights in violation of the First and Fourteenth Amendments.

35.     Plaintiff Rev. John Seay is a pastor in Maryland and is suffering ongoing harm and deprivation of his free speech, religious and assembly rights in violation of the First and Fourteenth Amendments.

36.     Plaintiff Rev. Gary Pomrenke is a pastor in Maryland and is suffering ongoing harm and deprivation of his free speech, religious and assembly rights in violation of the First and Fourteenth Amendments.

37.     Plaintiff Rev. Gary L. Cox is a pastor in Maryland and is suffering ongoing harm and deprivation of his free speech, religious and assembly rights in violation of the First and Fourteenth Amendments.

38.     Plaintiff Rev. Steven Dixon is a pastor in Maryland and is suffering ongoing harm

and deprivation of his free speech, religious and assembly rights in violation of the First and Fourteenth Amendments.

39.     Plaintif Rev. Johnny Hudson is a pastor in Maryland and is suffering ongoing harm and deprivation of his free speech, religious and assembly rights in violation of the First and Fourteenth Amendments.  Furthermore, as a man born without arms, the Order to wear a mask or face covering is an outrageous affront to his personal liberties and denies him access to drive his car which he does with his teeth, facial recognition on his phone which is required to call as he has no hands, and makes him feel like the state has forced and controlled his body in a way that is frightening and harmful to his health and liberty.

40.     Plaintiff Deacon David Serenda is a church officer in Maryland and is suffering ongoing harm and deprivation of his free speech, religious and assembly rights in violation of the First and Fourteenth Amendments.

41.     Reopen Maryland, LLC is a Maryland corporation with over 22,000 members, mostly Maryland residents and small business owners, who demand immediate redress of their harms and ongoing violations of constitutional rights and are suffering ongoing harm and deprivation of his free speech, religious and assembly rights in violation of the First and Fourteenth Amendments and the Maryland Declaration of Rights explained herein. Exhibit H (affidavit).

42.     Defendant, GOVERNOR LARRY HOGAN, is sued in his official capacity as Governor of the State of Maryland is responsible for enacting and enforcing the COVID-19 Executive Orders and other Orders at issue in this litigation.

43.     Defendant Robert Neall, is sued in his official capacity as Secretary of the Maryland Department of Health.  As Secretary of Health Mr. Neall is responsible for enacting and carrying out the Governor's orders, and is averred to have delegated his authority to non-sworn medical advisors and to his Deputy Secretary of Public Health, Fran Phillips, R.N.

44.     Defendant Frances Phillips is sued in her official capacity as the Deputy Secretary of Public Health at the Maryland Health Department.  Deputy Secretary Phillips is a registered nurse who has overseen sanitation programs in Anne Arundel County prior to taking on the leading role of shaping and influencing the drafting and enactment of Governor Hogan's Executive Orders for the State of Maryland, is averred to be obtaining direct input from and delegating authority for content of Executive Orders which the Governor enacts to non-sworn medical advisors including but not limited to Tom Inglesby, Justin Lessler, M.D., Scott Gottlieb and others.

45.     Defendant Woodrow Jones III is sued in his official capacity as Superintendent of the Maryland State Police.  Superintendent Jones is responsible, among other duties, for the enforcement of Maryland State Code and criminal violations of executive orders.

## JURISDICTION AND VENUE

46.     This action arises under the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983. This action also arises under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §2000cc, *et seq.* This action also arises under Articles 1 (Government originating from the people), 2 (United States Constitution, laws, supreme law of State), 5 (Common Law and Statutes of England), 8 (Separation of powers), 9 (Power of suspension or execution of laws), 10 (Freedom of speech and debate), 13 (Redress of grievances by petition to legislature), 24 (Due Process), 25 (Excessive bail and fines), 26 (Warrants for search and seizure), 32 (Persons subject to Martial Law), 36 (Freedom of Religion), 40 (Freedom of Speech and Press), 44 (War time application of Constitutions) of the Constitution of Maryland, Declaration of Rights.

47.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

48.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

49.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure, and is authorized to grant a temporary restraining order and injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

50.     This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, pursuant to 42 U.S.C. § 1988.

## <u>GENERAL ALLEGATIONS</u>

*"All the great things are simple, and many can be expressed in a single word: freedom; justice; honor; duty; mercy; hope." – Winston Churchill*

*"The power granted to the Union is exclusive...when…[i]t is not a mere possibility of inconvenience in the exercise of powers, but an immediate constitutional repugnancy, that can, by implication, alienate and extinguish a pre-existing right of sovereignty...**The power over commerce**…was one of the primary objects for which the people of America adopted their government…and the attempt to restrict it comes too late." – Chief Justice John Marshall,*
*Gibbons v. Ogden, 22 U.S. 1, 37-8, 190, 9 Wheat. 1, 6 L.Ed. 23 (1824).*

*"Whence to God alone we render worship, but in other things we gladly serve you, acknowledging you as kings and rulers of men, and praying that with your kingly power you be found to possess also sound judgment.  But if you pay no regard to our prayers and frank explanations, we shall suffer…persuaded that every man will…render account to the power he has received from God, as Christ intimated when He said, "To whom God has given more, of him shall more be required."*
*–Justin Martyr, First Apology, Ch. XVII, circa 150-60, A.D.*

## A.     GOVERNOR HOGAN'S PROCLAMATIONS AND EXECUTIVE ORDERS GO BEYOND THE "NECESSITY OF THE CASE" AND ARE *ULTRA VIRES* UNDER TITLE 14 OF THE PUBLIC SAFETY ARTICLE.

51.     The rule regarding pandemic powers set down by Justice Harlan in 1905 limits state and local authority to the strictest "necessity of the case" whenever exerting police power such as stay-at-home quarantines.

"as the laws there involved went beyond the necessity of the case, and, under the guise of exerting a police power,

66

> invaded the domain of Federal authority, and violated rights
> secured by the Constitution, this court deemed it to be its
> duty to hold such laws invalid."

*Henning Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643, 3 Ann.Cas. 765 (1905).

52.     Governor Hogan has, respectfully, gone beyond all necessities of the case and continues to invade the domain of Federal authority and our rights secured by the Constitution, and this Court should both hold Title 14 invalid as applied and for vagueness, as well as overturning as *void* and/or *void ab initio* each and every proclamation of catastrophic health emergency and related executive order of Governor Hogan.

53.     On March 5, 2020, Governor Larry Hogan issued a Proclamation of Catastrophic Health Emergency, which declared a state of emergency in the State of Maryland.  He renewed those Proclamations on March 17, 2020 and April 10, 2020. A true and correct copy of each Proclamation is attached hereto as **Exhibit**  and incorporated herein.

54.     Title 14 of the Public Safety Article, Md. Code Ann. 14-106, et seq., provides only "specific powers" to the Governor in times of his declaring an emergency.  Those do not include any powers to require the population to stay-at-home, wear face masks, refrain from assembling in church, refrain from doing business or participating in commerce.

55.     The statute cited by the Governor to demonstrate his emergency powers is Title 14 of the Public Safety Article.  However, that statute does not permit his extensive powers as presently exercised and detailed hereinbelow.  Additionally, it is important to understand that in the Legislative History of Maryland, Title 14 was passed in 2002 in the wake of 9/11 and its focus was on war and emergencies such as radiological, biological and chemical warfare causing and creating mass casualties and extensive death, not a percentage increase in virus carriers among healthy Marylanders which results in a death rate of less than .012 percent of primarily limited population segments such as elderly and nursing home residents, as horrible as that is.

56.     The Governor's emergency statutory powers under Title 14 are limited to: emergency plans for emergency operations, integration and coordination with local emergency operations, procurement of supplies and equipment for emergency purpose, authorizing studies and surveys, appointing directors of local emergency management operations to coordinate with local authorities, coordinate with national authorities (14-106(b)(2).

57.     Title 14-106(c)(1) specifically requires the Governor "shall consider, on a continuing basis, steps that could be taken to prevent or reduce the harmful consequences of potential emergencies".  The Governor has not followed this statutory duty and in fact has ignored and refused to respond to even members of his own Party's House GOP Caucus as well as many Plaintiffs hereinabove.

58.     Title 14-107 allows that a state of emergency only exists and continues under a Governor's order or proclamation until:

      a.  The threat or danger has passed or dealt with to the extent that emergency conditions no longer exist; and

      b.  The Governor terminates the executive order or proclamation.

It is alleged herein that the no threat or danger or emergency conditions exist or continue to exist and the Governor has failed to terminate the emergency proclamations.

59.     Title 14-107(a)(3) requires that "a state of emergency may not continue for longer than 30 days unless the Governor renews the state of emergency" which the Governor may not do if there is no actual emergency, or if any actual emergency is adequately being dealt with.  It is alleged herein that the Governor has failed to follow this statutory limitation on his powers and has unlawfully extended the "emergency" proclamations beyond 30 days.

60.     Title 14-107(b)(1) requires the Governor to indicate:

      a.  The nature of the emergency;

    b.  The area threatened; and

    c.  The conditions that have brought about the state of emergency…

It is alleged herein that the Governor has failed to follow this statutory mandate by averring generally his view and those of improperly delegated medical professionals decisions without setting forth, in incontrovertible detail, the actual nature of any emergency, specific area threatened and conditions that brought this about.

61.    Title 14-3A-01, et seq., grants the Governor Emergency Health Powers.  This statute is the authority that the Governor purports to exercise his proclamations and executive orders under.  However, his proclamations, executive orders and actions are *ultra vires* and fail to meet the statutory obligations placed upon his office.

62.    The statute was historically part of the 2002 aftermath of 9/11 to permit the Governor additional authority during times of war or catastrophic conditions.

63.    Those conditions are limited to "a situation in which extensive loss of life or serious disability is threatened imminently" and is expressly stated to include "nerve gas, anthrax…or viral agent…capable of causing extensive loss of life or serious disability; or radiation at levels capable of causing extensive loss of life or serious disability." *Id.*

64.    At no time has there been a state of war, or serious conditions such that "extensive loss of life" actually or imminently exists under the current state of catastrophic health emergency.  Even if imminence can be granted the Governor on March 5, 2020 when the initial proclamation was issued by him and encouraged upon the entire Union by way of his influential office as Chair of the National Governor's Association, fear alone is no indicator of reality concerning imminence of extensive loss of life.  Not a single model, even the WHO the Governor cites in his original proclamation, indicated that extensive loss of life would occur in Maryland.  There may be an argument that it could occur in Italy or China, which turned out to be not accurate, but there was

never a study cited in his proclamations and relied upon by the Governor that Maryland would also suffer any such level of fear and anxiety of mass casualties.

65.     Although the Governor has refused to respond to requests from Members of the House of Delegates and members of the public as to where he believes he derives his power to order all healthy Maryland citizens to remain in their homes indefinitely, or to wear masks to enter into commerce, the Public Safety statute Title 14, including the Governor's Health Emergency Powers statute 14-3A-01 et seq., has no such provisions.

66.     Additionally, the Governor has no power given to him either in statute or law to choose businesses to remain open, to close all other businesses and churches, to forbid and/or suspend the Bill of Rights and the liberties secured thereunder, nor forbid anyone from recreation.

67.     Even if the Court finds that a health emergency existed such that the Governor's proclamation of executive powers were reasonable, the ongoing situation belies any such finding, as does any rational statutory relation to the Governor's actions of picking and choosing which businesses and social welfare and/or ministries can stay open, forcing everyone to remain in their houses, to wear masks to participate in commerce now being alleged for possibly at least a year, or refuse to permit gatherings for free speech, assembly, infer the threat to elected Members of the House of Delegates with arrest should they speak at a political rally or participate in the petitioning of redress of grievance against the Executive Orders or other government action, or to forbid the actual, physical corporate worship and call of a congregation together under God, regardless of which religion or state practice, under any such ongoing powers.

**B.     THE STATE'S ENFORCEMENT OF GOVERNOR HOGAN'S "ESSENTIAL/NON-ESSENTIAL" GATHERING AND COMMERCE ORDERS.**

68.     On April 30, 2020 Delegate Dan Cox was informed that there was an inference of his likely arrest should he participate in the public speaking of the Vehicle-Ride Rally to Reopen Maryland on May 2, 2020 to begin in Frederick and continue to Salisbury, MD.  On May 1, 2020 this inference of threat of arrest was confirmed by the Governor's Senior Advisor, Andrew Cassilly who copied the Governor's Chief Counsel Mike Pedone, in response to Del. Coxes' request for permission to leave his home and speak at the rally, and participate in it.  (see Exhibit A).  Delegate Cox believed the inference of threat of arrest and its written confirmation from the Governor's Senior Advisor with acquiescence to the threat of arrest by the Governor's Office of Legal Counsel Chief Counsel Mike Pedone, and therefore curtailed his speech and decided against attending and speaking at the Rally.  Del. Cox is greatly harmed and the harm is imminent and ongoing and without other adequate remedy than TRO and injunctive relief to allow him to leave his home in order to speak at political events.

69.     On or about Easter Sunday, Frederick Baptist Church held "drive-in" services led by Pastor John Seay.  Delegate Cox and his family attended the event as it was the only drive-in Easter service in the area known to him.  As Delegate Cox and family prepared to enter the church driveway after leaving the "round-about" two Maryland State Police cars were leaving the area, having apparently been surveilling the church drive-in service.  Delegate Cox confirmed with local law enforcement that the orders to surveil churches on Easter Sunday to enforce the Governor's stay-at-home orders were solely being followed by the MSP and not other local law enforcement. *Id.*

70.     Antietam Battlefield KOA ("campground") is losing approximately $40,000 a month because of the Governor's order to close.  The campground was visited with a demand for closure under the threat of arrest and/or criminal charges by the Maryland State Police on or about

March 24, 2020 and was then shut down.  If the campground does not reopen immediately it may face bankruptcy.  It is continuously harmed by the Governor stating it is a "non-essential" business and demands redress and opportunity to reopen using its own wise and careful judgment exercised by years of diligence to determine its procedures for following health precautions.

71.    Staff Sergeant Jason Anderson now retired from the Md. Army National Guard Infantry Alpha Co., having served honorably and promoted in the 82d Airborne Division at Ft. Bragg, volunteered to return to the battlefield during the "surge of 2007" with his younger cousin in the 1/175th. While serving in Iraq over Christmas of 2008, Petitioner SSG Jason Anderson was "blown up" when his HUMVEE hit a mine and was attacked by the enemy.  He survived and is 100% disabled and cannot walk lengthy periods, relies heavily upon physical therapy each month and medical pain injections in his back, and is awaiting a Purple Heart award once state officials finish the paperwork, which will benefit his children once awarded.

72.    The Governor's orders and the Health Department's delegation of power to the County Executive and local health officials' closure of his Frederick County physical therapy health center and health clinic for injections has irreparably harmed SSG Anderson, such that his body is in need of immediate continuance of care.

73.    Additionally, because of his PTSD, wearing a face mask in public brings back PTSD memories of his unit arresting terrorists, and the first thing they required was to put a black covering over the face and head of the terrorists so they would not be able to identify them as soldiers and to ensure security measures during arrest.  Seeing people forced to wear – especially black face masks – in public causes him to recall the battlefield.  Staff Sergeant Anderson does not only object to face coverings for medical reasons, but objects to the Order as unconstitutional, forcing control over his face and body where there is no legal or constitutional grounds to do so. Covering of faces by order is a sign of capture on the battlefield, and subservience to the captor.

Americans are not to be treated as such and should never be so forced.  He prays immediate injunctive relief.

74.      Additionally, SSG Anderson cannot exercise similar to others and for health purposes and enjoyment and peace of mind desires to spend time in parks sitting, or riding in golf carts or other activities such as fishing for recreation, currently forbidden by Governor Hogan's executive orders.

75.      Additionally, SSG Anderson objects to the Governor rationing and forbidding access to COVID-19 drugs should he ever need the same upon his own choice with his doctor.

76.      Additionally, SSG Anderson objects to being prevented, and listed as a "non-essential" person, for purposes of obtaining a hair cut, or for getting his car washed.

77.      Additionally, SSG Anderson objects to being prevented from accessing bars and restaurants, peacefully assembling or congregating, exercising speech or other rights and liberties.

78.      SSG Anderson states to the Court that he fought for and gave his body in suffering permanent disability for the protection of freedom and believes the Governor's orders take that freedom away.

79.      Lance Corporal Christopher Repogle is a U.S. Marine veteran of war in Iraq, having served Two tours of duty from 2004 through 2007.   He is also an assistant minister at a church in Maryland.  The church gathering had allowed him to handle the mental and physical abuse he received in The Marine Corp.  The church house gathering brings his mind under control when it had otherwise brought him into great deep depression and now he feels as if he is being forced to live out his nightmare every day.  He severely objects to the denial to fulfill his call from the most High God to serve and minister to His children through an actual assembly of the church guaranteed first by God, then by Federal Constitution, and finally by Maryland State Constitution.  He severely objects to being ordered to wear a mask in public or ordered to

remain in his house without opportunity to go to restaurants and stores and Parks for recreation as ordered by Governor Hogan.  Wearing a mask, and seeing many people wearing them – especially black masks - brings back traumatic memories of the battlefield.

80.     Lance Corporal Christopher Repogle demands redress of grievance and an immediate injunction restoring his rights protected under the constitution.

81.     Reverend Christopher Ogne, pastor of Lutheran Church of our Savior in Bryans Road, Maryland, has been severely harmed and replaced by Governor Hogan in his position and duties as pastor of his congregation because the doors of his church have been shuttered since March 16, 2020 by Proclamation of the Governor.  Rev. Ogne has been prevented from holding actual congregational meetings to allow authority to operate the church, being supplanted by Gov. Hogan in that role of deciding when to call an assembly.

82.     On or about April 3, 2020, because of the Governor's orders and the Courts being closed by citation to the Governor's Catastrophic Health Emergency Proclamations, neither he nor parishioners were able to obtain a marriage license for a ceremony of marriage.  He then proceeded to perform a marriage of Christian vows without the license for the couple.

83.     On or about April 17, 2020 because of the Governor's orders and the Courts being closed by citation to the Governor's proclamations, he had to perform a virtual marriage where the mother of the bride wept the entire time, and the father gave his daughter away over the phone on loud speaker, all in an attempt to comply with the Governor's orders preventing assembly of religious gatherings and to "stay-at-home".

84.     Rev. Steven Dixon is pastor of Porter's Grove Baptist Church in Rising Sun, Maryland.  On or about March 24, 2020 the Maryland State Police (MSP) came to that church located at 478 Connelly Road, Rising Sun, MD and hand delivered a notice and threat of criminal prosecution if the pastor did not shut his church's doors and cease holding worship services, which

entry on the property and delivery of the threat by the officer was recorded on video. Ex. G (MSP COVID-19 Emergency Compliance Check).  The threat did not include a copy of any Executive Order of the Governor. The threat included the threat of prosecution and stated:

> "We [MSP] hope you voluntarily comply with the Governor's Executive Order.  If the requirements of the Governor's Executive Order [sic] are not complied with the Maryland State Police…will take the appropriate enforcement action, in consultation with the local state's attorney's office. Violation of the Executive Order is punishable under Public Safety Article 14-3A-08 and could result in a misdemeanor conviction and up to one year in jail, or a fine up to $5,000 or both. Groups of more than 10 people in a gathering or at an event are prohibited. This includes social, community, spiritual, religious, recreational, leisure, and sporting gatherings and events. The operation of non-essential businesses is also prohibited during the state of emergency. The Executive Order does not require businesses, organizations, establishments, and facilities that are part of the critical infrastructure sectors identified by the U.S. Department of Homeland Security's Cybersecurity and Infrastructure Agency to close.

*Id.*

85.     This threat had the effect of deeming the pastor and his congregation "non-essential" which is a violation of the First Amendment of the United States Constitution.

86.     Rev. Steve Dixon demands redress of grievance and an immediate injunction restoring his rights under the Constitution, striking the Governor's orders, and forbidding any enforcement action by any government entity.

87.     Rev. Gary Pomrenke is a pastor in Maryland who similarly demands redress of grievance and an immediate injunction restoring his rights under the Constitution, striking of the Governor's orders, and forbidding any enforcement action by any governmental entity.

88.     Rev. Gary Cox is a pastor in Maryland who similarly demands redress of grievance and an immediate injunction restoring his rights under the Constitution, striking of the Governor's orders, and forbidding any enforcement action by any governmental entity.

89.     Rev. Johnny Hudson is a pastor in Maryland who similarly demands redress of grievance and an immediate injunction restoring his rights under the Constitution, striking of the

Governor's orders, and forbidding any enforcement action by any governmental entity.

### B.  GOVERNOR HOGAN'S UNEQUAL TREATMENT OF "ESSENTIAL" AND "NON-ESSENTIAL" BUSINESSES AND NON- RELIGIOUS AND RELIGIOUS GATHERINGS.

90.     In publicly released photographs from Governor Hogan's own near-weekly press conferences, it is clear that Governor Hogan practices civil disobedience to his own Executive Orders.



91.     The above photograph shows the Governor's press conference dated April 29, 2020 where at least 27 individuals, including the Governor and his Deputy Health Director Fran Phillips, R.N. who uses her expertise to mandate the social distancing and no gathering requirements the Governor orders, gathered together in assembly in violation of the large gathering requirements of the Governor.  Furthermore, they are gathering without all wearing face coverings or practicing at

least six feet social distancing, with some having no masks, some hanging them down off their chins, and most standing or sitting within an arms-length of each other.

92.     Under the Governor's current Executive Orders forbidding large gatherings and face masks, these failures would likely result in a criminal charge of one year in jail and a $5000 fine, which are egregious and violative of the US and Maryland Constitutional requirements to not enact excessive bail or fines.

93.     Delegates Dan Cox, Warren Miller, Neil Parrott, and Robin Grammer, standing as Members of the Maryland House of Delegates, each are individual and corporately harmed under said orders, depriving them from exercising their constitutional oversight of the Governor as members of a co-equal Branch of Government, their right to free speech and assembly with constituents and the exercise of their duties under the Maryland Constitution and Declaration of Rights which guarantees the free passage and safety from arrest of duly elected members of the House of Delegates when they are performing Legislative Duties and traveling to and from the Maryland State House.

94.     Under the Governor's inferred threat to arrest Delegate Dan Cox if he travels to Annapolis where the State House and his Legislative offices are located, and/or speaks at the Rally to Reopen Maryland to exercise his duties to represent his constituents, constitutes an illegal overreach of the Governor's powers in his Executive Orders.  See Exhibit F.


95.     Under the Governor's Executive Orders, Lowes and Walmart are permitted to have hundreds of cars and people because the Governor chose them to be "essential" businesses. However, under the same orders a church may not have anyone in its buildings with limited exceptions for "virtual" services, and businesses that operate for camping or recreation or other provisions such as hair salons and a myriad of other businesses, are prohibited from even being

open.



96.     Under the Governor's Orders the Legislature, and said Delegate Plaintiffs herein, were intimidatingly surrounded by Maryland Army National Guard Full-Armored Military Vehicles during the duly called and ongoing Maryland General Assembly 2020 Session, all in violation of the rights of said sworn Delegates under the Declaration of Rights as set forth hereinbelow.



97.     Under the Governor's Orders, neither he nor his staff strictly complies with mask or face coverings or social distancing, as seen in various official photos, which debunks and defeats his argument that wearing them in proximity to others is necessary and essential under health and safety emergency orders.



Maryland Unites: Responding to the COVID-19 Pandemic



AJA4_7052.JPEG        JA4_7030.JPEG        JA4_7045.JPEG        JA4_7049.JPEG

JA4_7072.JPEG        JA5_2168.JPEG        JA6_5422.JPEG        JA6_5452.JPEG

JA6_5457.JPEG        JA6_5462.JPEG        JA6_5495.JPEG

JA6_5500.JPEG

JA6_5536.JPEG        JA6_5541.JPEG        JA6_5553.JPEG        JA6_5554.JPEG

JA6_5560.JPEG        JA6_5570.JPEG

JA6_5585.JPEG

Bibliographic Information
Event:                    White House Call
Photographer:         Joe Andrucyk
Date of Photographs: 03/30/2020

### C. LESS RESTRICTIVE ALTERNATIVES ARE AVAILABLE TO GOVERNOR HOGAN.

98.     Despite Governor Hogan's insistence that some businesses he chooses are "non-essential" or that in-person religious gatherings of more than 10 people cannot continue because they would spread COVID-19, the State of Maryland has failed to consider other, substantially less restrictive alternatives to an absolute prohibition of business, commerce, individual liberty and "religious" gatherings.

99.     Like the State of Maryland, other states have issued stay-at-home orders or recommendations but have ordered significant exemptions allowing all or most businesses to remain open, allowing and exempting all religious services, and providing significant exemptions and freedom for individuals including no mask mandates, no stay-at-home orders or curfews, allowing health care facilities to remain open for access of care and other significant, well-tailored less restrictive alternatives.

100.    Numerous other states have similarly permitted religious gatherings to be treated equally with non-religious gatherings, and some states have refused to close any businesses.

101.    As these other states have demonstrated, Governor Hogan can continue to pursue the State's objective of preventing the spread of COVID-19 without unnecessarily burdening interstate commerce and business, trampling on individual liberties or treating religious gatherings in a discriminatory manner.  The State has numerous other, less restrictive alternatives available to it to do so.

102.     **Governor Hogan has neither tried without success nor considered and ruled out for good reason these less restrictive alternatives**.

103.     Governor Hogan has constitutionally permissible alternatives available, but has failed to attempt to achieve the State's purported goals without unnecessarily interfering with constitutionally protected activities.

### D. IRREPARABLE INJURY TO PLAINTIFFS FROM GOVERNOR NORTHAM'S GATHERING ORDERS.

104.     Plaintiffs have been explicitly targeted, singled out, and punished for participating in United States free speech and assembly, commerce and interstate business, for refusing to wear face coverings, and for wishing to continue exercising the right to attend an in-person religious gathering when exempted commercial and non-religious entities may accommodate gatherings, crowds, and masses of people without numeric limitation, and without targeting or punishment by the government.

105.     As a result of Governor Hogan's Orders, Plaintiffs have suffered and are suffering irreparable injury by having to curtail their liberties stated hereinabove under threat of criminal sanction, and all attendees of future assemblies, liberties of redressing grievances in protest and attendance at services, each threatened with criminal sanction.

106.     As a result of Governor Hogan's Orders, Plaintiffs have suffered and are suffering irreparable injury by being prohibited from engaging in their constitutionally and statutorily protected rights of free exercise, assembly, and speech.

107.     As a result of Governor Hogan's Orders, Plaintiffs have suffered and are suffering irreparable injury by the infringement of their constitutionally protected right to be free from government hostility toward religion, and have been forced to self-censor, cease religious worship services, and violate their sincerely held religious beliefs.

### E. PLAINTIFF'S ATTEMPTS TO SECURE RELIEF WITHOUT JUDICIAL INTERVENTION WERE IGNORED AND FURTHER ATTEMPTS TO NOTIFY THE STATE ARE FUTILE AND IMPRACTICAL BEFORE TOMORROW'S RALLY TO REOPEN MARYLAND AND SERVICES ON SUNDAY AT PLAINTIFF CHURCHES.

108.     On May 1, 2020, prior to the commencement of the instant action, Plaintiff Delegate Daniel L. Cox sent by e-mail letter to Governor Hogan's Senior Advisor, with copies to Governor Hogan's Chief Counsel Mike Pedone, a request for written confirmation that the Governor had withdrawn his ban on assemblies and would permit attendance at, participation in and speaking at the Rally to Reopen Maryland.

109.     The Governor's Senior Advisor twice responded by referring the Delegate to the Governor's Executive Order prohibiting large gatherings and refused to state Del. Cox would not be arrested for speaking at the Rally.

110.     The failure of Governor Hogan or his officials to confirm withdrawal or cessation of enforcement of the discriminatory 10-person gathering ban for free speech, assembly or religious services in the Executive Orders and shows the irreparable injury to Plaintiffs constitutionally protected freedoms is ongoing.

111.     The failure of Governor Hogan or his officials to adequately respond to Plaintiff Del. Coxes' communication also shows that notice and an opportunity to respond to this lawsuit cannot be effectuated, and would be futile, prior to tomorrow's Rally to Reopen Maryland and this Sunday's worship services at churches, when the Maryland State Police and/or other government officials will again interfere with the constitutional liberties of Plaintiffs absent a temporary restraining order from this Court.   Ongoing harm mandates both temporary and permanent injunctive relief as well, enjoining Governor Hogan and all those state or local authorities or anyone from enforcing his Orders.

## CONSTITUTIONAL CLAIMS

### COUNT ONE—THE GOVERNOR'S LIMITATION ORDERS VIOLATE
### PLAINTIFFS RIGHT TO FREE EXERCISE OF RELIGION UNDER THE FIRST AMENDMENT

112.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1– 111 above.

113.    The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State of Maryland from abridging Plaintiff's rights to free exercise of religion.

114.    Plaintiff pastors have sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that it is to follow its teachings.

115.    Plaintiff pastors have sincerely held religious beliefs, rooted in Scripture's commands (*e.g.*, Hebrews 10:25), that followers of Jesus Christ are not to forsake the assembling of themselves together, and that they are to do so even more in times of peril and crisis. Indeed, the entire purpose of the Church (in Greek "ekklesia," meaning "assembly") is to assemble together Christians to worship Almighty God.

116.    The Governor's Orders, on their face and as applied, target Plaintiffs' sincerely held religious beliefs by prohibiting religious gatherings.

117.    The Governor's Orders, on their face and as applied, impermissibly burden Plaintiffs' sincerely held religious beliefs, compel Plaintiffs to either change those beliefs or to act in contradiction to them, and force Plaintiffs to choose between the teachings and requirements of its sincerely held religious beliefs in the commands of Scripture and the State's imposed value system.

118.    The Governor's Orders, on their face and as applied, place Plaintiffs in an irresolvable conflict between compliance with the Governor's Orders and its sincerely held

religious beliefs.

119.    The Governor's Orders, on their face and as applied, put substantial pressure on Plaintiffs to violate its sincerely held religious beliefs by ignoring the fundamental teachings and tenets of Scripture concerning the assembling of Believers.

120.    The Governor's Orders, on their face and as applied, are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious beliefs, speech, assembly, and viewpoint of Plaintiffs.

121.    The Governor's Orders, on their face and as applied, constitute a substantial burden on Plaintiffs' sincerely held religious beliefs.

122.    The State lacks a compelling, legitimate, or rational interest in the Governor's Orders application of different standards for churches and religious gatherings than those applicable to exempted businesses or non-religious entities.

123.    Even if the Governor's Orders restriction on religious gatherings were supported by a compelling interest, which they are not, they are not the least restrictive means to accomplish the government's purported interest Governor's Orders, on their face and as applied, fail to accommodate Plaintiffs' sincerely held religious beliefs.

124.    The Governor's Orders, on their face and as applied, specifically target Plaintiffs' sincerely held religious beliefs and set up a system of individualized exemptions that permits certain other similarly situated businesses or non-religious entities to continue operations under certain guidelines while prohibiting religious gatherings, such as Plaintiffs' church and worship services, from operating with similar guidelines.

125.    The Governor's Orders, on their face and as applied, constitute an express and overt religious gerrymander.

126.    The Governor's Orders, on their face and as applied, have caused, are causing, and

will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

127.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

WHEREFORE, Plaintiffs respectfully pray for relief against the State as hereinafter set forth in its prayer for relief.

## COUNT TWO—THE GOVERNOR'S ORDERS VIOLATE PLAINTIIFFS' RIGHT TO PEACEABLE ASSEMBLY UNDER THE FIRST AMENDMENT

128.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1– 111 above.

129.    The First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging the right of the people peaceably to assemble.

130.    The Governor's Orders, on their face and as applied, are an unconstitutional prior restraint on Plaintiffs' right to assemble.

131.    The Governor's Orders, on their face and as applied, unconstitutionally discriminate on the basis of viewpoint.

132.    The Governor's Orders, on their face and as applied, unconstitutionally discriminate on the basis of content.

133.    The State lacks a compelling, legitimate, or rational interest in the Governor's Orders application of differential standards for Members of the House of Delegates, members of the public who express opposition to the Governor's draconian orders, businesses deemed "non-essential" and churches and religious gatherings, than those applicable to exempted businesses or non-religious entities.

134.    The Governor's Orders, on their face and as applied, are not the least restrictive

means to accomplish any permissible government purpose sought to be served by the orders.

135.   The Governor's Orders, on their face and as applied, are not narrowly tailored to serve the government's purported interest.

136.   The Governor's Orders, on their face and as applied, are irrational and unreasonable and impose unjustifiable and unreasonable restrictions on Plaintiffs' constitutionally protected right to assemble.

137.   The Governor's Orders, on their face and as applied, impermissibly vest unbridled discretion in the hands of government officials, including Governor Hogan and his designees, to apply or not apply the Governor's Orders in a manner to restrict free assembly.

138.   The Governor's Orders, on their face and as applied, are underinclusive by limiting their gathering prohibitions to only certain businesses or organizations deemed "non- essential."

139.   The Governor's Orders, on their face and as applied, are unconstitutionally vague and overbroad as they chill and abridge the free assembly rights of Plaintiffs.

140.   On their face and as applied, the Governor's Orders and violation of Plaintiffs' right to free assembly have caused, are causing, and will continue to cause Plaintiffs to suffer immediate and irreparable injury and undue and actual hardship.

141.   Plaintiffs have no other adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against the State as hereinafter set forth in its prayer for relief.

## COUNT THREE - THE GOVERNOR'S ORDERS VIOLATE PLAINTIFFS RIGHTS TO FREEDOM OF SPEECH UNDER THE FIRST AMENDMENT

142.   Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1– 111 above.

143.     The Free Speech Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiffs' freedom of speech.

144.     The Governor's Orders, on their face and as applied, are an unconstitutional prior restraint on Plaintiffs' speech.

145.     The Governor's Orders, on their face and as applied, unconstitutionally discriminate on the basis of viewpoint.

146.     The Governor's Orders, on their face and as applied, unconstitutionally discriminate on the basis of content.

147.     The State lacks a compelling, legitimate, or rational interest in the Governor's Orders' application of different standards for churches and religious gatherings than those applicable to exempted businesses and non-religious entities.

148.     The Governor's Orders, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served by the orders.

149.     The Governor's Orders, on their face and as applied, are not narrowly tailored to serve the government's purported interest.

150.     The Governor's Orders, on their face and as applied, do not leave open ample alternative channels of communication for Plaintiffs.

151.     The Governor's Orders, on their face and as applied, are irrational and unreasonable and impose unjustifiable and unreasonable restrictions on Plaintiffs' constitutionally protected speech.

152.     The Governor's Orders, on their face and as applied, impermissibly vest unbridled discretion in the hands of government officials, including Governor Hogan and his designees, to apply or not apply the Governor's Orders in a manner to restrict free speech.

153.     The Governor's Orders, on their face and as applied, are underinclusive by limiting their prohibitions to only certain entities, organizations, or businesses deemed "non- essential."

154.     The Governor's Orders, on their face and as applied, are unconstitutionally overbroad as they chill and abridge the free speech rights of Plaintiffs.

155.     On their face and as applied, the Governor's Orders and violation of Plaintiffs' rights to free speech have caused, are causing, and will continue to cause Plaintiffs to suffer immediate and irreparable injury and undue and actual hardship.

156.     Plaintiffs have no other adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against the State as hereinafter set forth in its prayer for relief.

## COUNT FOUR—THE GOVERNOR'S ORDERS VIOLATE
## THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT

157.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1– 111 above.

158.     The Establishment Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the government from establishing a religion.

159.     The Establishment Clause also prohibits excessive government entanglement with religion.

160.     The Establishment Clause also prohibits the government from showing hostility towards religion and prohibits showing favoritism towards one religious sect over another or between non-religion and religion.

161.     The 10-person government mandated limit in the Governor's Orders imposed on

religious gatherings in churches violates the Establishment Clause because the State of Maryland thereby dictates the manner in which Christians and churches must worship with no more than 10 people or worship online, even when Plaintiff has no ability to broadcast worship online.

162.   The Establishment Clause does not permit the State of Maryland to dictate under penalty of criminal sanctions the manner, style, form, practices, or sacraments of religious worship and thereby impose its own version of religious worship on every church and citizen of the State of Maryland.

163.   In fact, as the Supreme Court has unequivocally stated, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (emphasis added).

164.   The State, through Governor Hogan's "gathering" prohibition orders, is purporting to prescribe what shall be orthodox in matters of religious worship, and is thus running roughshod over the Establishment Clause.

165.   The Governor's Orders, on their face and as applied, permit the State to display impermissible hostility towards religious gatherings.

166.   The Governor's Orders, on their face and as applied, impermissibly show favoritism towards certain non-religious gatherings over religious gatherings.

167.   The Governor's Orders, on their face and as applied, violate the Establishment Clause because they excessively entangle the government with religion.

168.   The Governor's Orders, on their face and as applied, purport to inform religious adherents and believers how they may choose to worship, assemble together, or engage in their religious freedoms.

169.   The Governor's Orders, on their face and as applied, purport to establish an

acceptable method of religious practice and worship, place a numerical limitation on the scope of how such religious practice and worship may occur, and provide a government imprimatur for only certain forms of "permissible" worship.

170.     The Governor's Orders, on their face and as applied, demonstrate overt hostility to religious practice and worship that does not conform to government sanctioned religious exercises.

171.     The Governor's Orders, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

172.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of its most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against the State as hereinafter set forth in their prayer for relief.

## COUNT FIVE—THE GOVERNOR'S ORDERS VIOLATE PLAINTIFF'S RIGHT TO EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT

173.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1– 111 above.

174.     The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to equal protection under the law.

175.     The Governor's Orders, on their face and as applied, are an unconstitutional abridgement of Plaintiffs' right to equal protection under the law, are not neutral, and specifically target Plaintiffs' gatherings for unequal treatment.

176.     The Governor's Orders, on their face and as applied, are an unconstitutional abridgment of Plaintiffs' right to equal protection because they permit the State to treat Plaintiffs differently from other similarly situated political, businesses and non-religious entities on the basis of the content and viewpoint of Plaintiffs gatherings.

177.     The Governor's Orders, on their face and as applied, impermissibly discriminate between certain non-religious gatherings and religious gatherings.

178.     The State lacks a compelling, legitimate, or rational interest in the Governor's Orders application of different standards for political, business, churches and religious gatherings than those applicable to exempted businesses or non-religious entities.

179.     The Governor's Orders, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served.

180.     The Governor's Orders, on their face and as applied, do not have a rational basis.

181.     The Governor's Orders, on their face and as applied, are irrational and unjustifiable and impose irrational and unjustifiable restrictions on Plaintiffs' political, business and religious gatherings and commercial activity.

182.     The Governor's Orders, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs' immediate and irreparable harm, and actual and undue hardship.

183.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

WHEREFORE, Plaintiffs respectfully pray for relief against the State of Maryland as hereinafter set forth in its prayer for relief.

### COUNT SIX—THE GOVERNOR'S ORDERS VIOLATE PLAINTIFFS' RIGHT TO A REPUBLICAN FORM OF GOVERNMENT UNDER THE GUARANTEE CLAUSE OF ARTICLE IV, § 4 OF THE UNITED STATES CONSTITUTION AND ARTICLES 2 OF THE MARYLAND DECLARATION OF RIGHTS

184.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1– 111 above.

185.     Article IV, § 4 of the United States Constitution requires the United States to guarantee to every citizen in the nation a republican form of government and Article 2 of the Maryland Declaration of Rights guarantees that the United States Constitution is the supreme law of the land in the State of Maryland.

186.     The Guarantee Clause's distinguishing feature is that the republican form of government it guarantees is the right of the people to choose their own governmental administration and pass their own laws.

187.     As interpreted by the federal judiciary and prominent scholars, the Guarantee Clause mandates that the federal government guarantee a form of government for all citizens in which supreme power resides in a body of citizens entitled to vote and exercised by elected officers responsible to such citizens.

188.     The Governor's Orders express, unilateral, and unequivocal exercises of purported executive authority over the constitutional rights of Plaintiffs' deprive them of the right to select their own government administration, pass their own laws, and maintain a government administration directly responsible to the people, including by laws that are enacted by the legislature in constitutional recognition of the separation of powers.

189.     The impermissible exercise of exclusive and unaccountable executive authority violates the Guarantee Clause of the United States Constitution.

190.     The Governor's Orders, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

191.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against the State as hereinafter set forth in its prayer for relief.

## COUNT SEVEN—THE GOVERNOR'S ORDERS VIOLATE

## PLAINTIFF'S RIGHT TO FREE EXERCISE OF RELIGION
## UNDER ARTICLE 36, DECLARATION OF RIGHTS, OF THE
## CONSTITUTION OF MARYLAND

192.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1– 111 above.

193.     Article 36 of the Declaration of Rights of the Constitution of Maryland states:

That as it is the duty of every man to worship God in such manner as he thinks most acceptable to Him, all persons are equally entitled to protection in their religious liberty; wherefore, **no person ought by any law to be molested in his person or estate, on account of his religious persuasion, or profession, or for his religious practice,** unless, under the color of religion, he shall disturb the good order, peace or safety of the State, or shall infringe the laws of morality, or injure others in their natural, civil or religious rights;…

(Emphasis added).

194.     Plaintiff pastors have sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that it is to follow its teachings.

195.     Plaintiff pastors have sincerely held religious beliefs, rooted in Scripture's commands (*e.g.*, Hebrews 10:25), that followers of Jesus Christ are not to forsake the assembling of themselves together, and that they are to do so even more in times of peril and crisis. Indeed, the entire purpose of the Church (in Greek "ekklesia," meaning "assembly") is to assemble together Christians to worship Almighty God.

196.     The Governor's Orders, on their face and as applied, target Plaintiff pastors' sincerely held religious beliefs by prohibiting religious gatherings.

197.     The Governor's Orders, on their face and as applied, impermissibly burden Plaintiff pastors' sincerely held religious beliefs, compel Plaintiff pastors to either change those beliefs or to act in contradiction to them, and force Plaintiff pastors to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of Scripture and the State's imposed value system.

198.    The Governor's Orders, on their face and as applied, place Plaintiff pastors in an irresolvable conflict between compliance with the Governor's Orders and its sincerely held religious beliefs.

199.    The Governor's Orders, on their face and as applied, put substantial pressure on Plaintiff pastors to violate its sincerely held religious beliefs by ignoring the teachings and tenets of Scripture concerning the assembling of Believers.

200.    The Governor's Orders, on their face and as applied, are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious beliefs, speech, assembly, and viewpoint of Plaintiff pastors.

201.    The Governor's Orders, on their face and as applied, constitute a substantial burden on Plaintiff pastors sincerely held religious beliefs.

202.    The State lacks a compelling, legitimate, or rational interest in the Governor's Orders' application of different standards for churches and religious gatherings than those applicable to exempted businesses or non-religious entities.

203.    Even if the Governor's Orders restriction on religious gatherings were supported by a compelling interest, which it is not, they are not the least restrictive means to accomplish the government's purported interest.

204.    The Governor's Orders, on their face and as applied, fail to accommodate Plaintiff pastors sincerely held religious beliefs.

205.    The Governor's Orders, on their face and as applied, specifically target Plaintiff pastors sincerely held religious beliefs and set up a system of individualized exemptions that permits certain other similarly situated businesses or non-religious entities to continue operations under certain guidelines while prohibiting religious gatherings, such as Plaintiff pastors church and religious gatherings, from operating with similar guidelines.

206.     The Governor's Orders, on their face and as applied, constitute an express and overt religious gerrymander.

207.     The Governor's Orders, on their face and as applied, have caused, are causing, and will continue to cause Plaintiff pastors immediate and irreparable harm, and actual and undue hardship.

208.     Plaintiff pastors have no adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

WHEREFORE, Plaintiff pastors respectfully prays for relief against the State as hereinafter set forth in its prayer for relief.

## COUNT EIGHT—THE GOVERNOR'S ORDERS
## VIOLATE
## PLAINTIFFS' RIGHTS TO FREEDOM OF SPEECH, ASSEMBLY, DUE PROCESS, RULE OF LAW, SEPARATION OF POWERS, NOT BE SUBJECT TO MARTIAL LAW AND RIGHTS UNDER ENGLISH COMMON LAW UNDER ARTICLES 5, 8, 10, 13, 24, 32, 40 AND 44, OF THE DECLARATION OF RIGHTS
## OF THE CONSTITUTION OF MARYLAND

209.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1– 111 above.

210.     The Plaintiffs are being deprived of their natural and Constitutional rights under the Maryland Declaration of Rights, of the Maryland Constitution, as follows:

> **Article 5** provides in pertinent part:
> (a) That the inhabitants of Maryland are entitled to the Common Law of England, and trial by Jury, according to the course of that Law, and the the benefit of such of the English statutes as existing on the Fourth day of July, 1776…[and that]
> (b) The parties to any civil proceeding in which the right to a jury trial is preserved are entitled to a trial by jury of at least 6 jurors."

> **Article 8** provides:
> That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; no person exercising the functions of one of said Departments shall assume or discharge the duties of

any other.

**Article 10** provides:
That freedom of speech and debate, or proceedings in the Legislature, ought not to be impeached in any Court of Judicature.

**Article 13** provides:
That every man [and woman] hath a right to petition the Legislature for the redress of grievances in a peaceable and orderly manner.

**Article 24** provides Due Process – (from the English Magna Carta, June 15, 1215):

That no man [or woman] ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

**Article 32** provides:
That no person except regular soldiers, marines, and mariners in the service of this State, or militia, when in actual service, ought, in any case, to be subject to, or punishable by Martial Law.

**Article 40** provides:
That the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects...

**Article 44** provides:
That the provisions of the Constitution of the United States, and of this State, appy, as well in time of war, as in time of peace; and any departure therefrom, or violation thereof,  under plea of necessity, or any other plea, is subversive of good government, and tends to anarchy and despotism.

211.    The Governor's Orders, on their face and as applied, are an unconstitutional prior restraint on Plaintiffs' speech and right to assembly in violation of Articles 10, 13, 40 and 44 of the Declaration of Rights.

212.    The Governor's Orders, on their face and as applied, unconstitutionally discriminate on the basis of viewpoint.

213.    The Governor's Orders, on their face and as applied, unconstitutionally discriminate on the basis of content.

214.   The State lacks a compelling, legitimate, or rational interest in the Governor's Orders' application of different standards for political, business, churches and religious gatherings than those applicable to exempted businesses and non-religious entities.

215.   The Governor's Orders, on their face and as applied, are underinclusive by limiting their prohibitions to only certain entities, organizations, or businesses deemed "non- essential."

216.   The Governor's Orders, on their face and as applied, are unconstitutionally overbroad as they chill and abridge the free speech and assembly rights of Plaintiffs.

217.   On their face and as applied, the Governor's Orders are a violation of Plaintiffs' rights to free speech and assembly have caused, are causing, and will continue to cause Plaintiffs to suffer immediate and irreparable injury and undue and actual hardship.

218.   The Governor's Orders violate the Plaintiffs' right of due process, both substantive and procedural, by consolidating all power and redress of grievance into one office of legal counsel responsible solely to the Governor, and otherwise requiring the practice of law before a secret Chamber of grievance similar to the forbidden King's Bench Star Chambers of old England, all in violation of Articles 5 and 24 of the Maryland Declaration of Rights.

219.   The Governor's Orders violate the Plaintiffs' right to a government by the People with a separation of powers into a Legislative, Judicial and Executive Branches, all in violation Article 8 of the Md. Declaration of Rights.

220.   The Governor's Orders violate the Plaintiffs' right to not be subject to Martial Law, by causing the Maryland State Police to arrest or threaten to arrest, or criminally summons, a citizen of Maryland, all while the Courts of Criminal and Civil Judicature are closed upon Orders of the Governor and citations thereto by Chief Judge Barbara, all in violation of Article 32 of the Declaration of Rights.

221.   Plaintiffs have no other adequate remedy at law to correct the continuing deprivation

of its most cherished liberties.

WHEREFORE, Plaintiffs respectfully pray\ for the relief against the State as hereinafter set forth in its prayer for relief.

## COUNT NINE—THE GOVERNOR'S ORDERS VIOLATE PLAINTIFFS' RIGHT TO HAVE LAWS SUSPENDED ONLY BY THE MARYLAND GENERAL ASSEMBLY, ARTICLE 9 OF THE DECLARATION OF RIGHTS

222.   Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1– 111 above.

223.   Article 9 of the Maryland Declaration of Rights fore-considered times of crisis and overreaching executive authority by mandating that no suspension of laws may be had except upon explicit and exact Act of the General Assembly.

224.   Art. 9 says: "that no power of suspending Laws or the execution of Laws, unless by, or derived from the Legislature, ought to be exercised, or allowed."

225.   The Governor's Orders suspend the laws towards Plaintiffs, preventing them from travel, confining them to their homes, forcing face coverings upon them in order to enter into commerce, suspending their right to do business, to work, to worship, to speak and to be free from fear of the prisons being opened and prisoners released apart from the lawful act of a sworn constitutional judge of the State.

226.   The Governor's Orders unequivocal and unilateral exercise of authority over the constitutional rights of Plaintiffs deprive Plaintiffs of the rights they possess under state and federal laws, suspends or has the effect of suspending those laws unlawfully, and passes its own administration of rules apart from the rule of law by the people.

227.   The impermissible exercise of such executive authority violates the Constitution of Maryland, purporting to suspend laws without the specific grant of authority by the same constitution which solely establishes the position and scope of authority of Governor, thus suspending laws without the Legislatures express permission or any constitutional authority.

228.   Irreparable harm has, is and continues to occur against Plaintiffs each day.

WHEREFORE, Plaintiffs respectfully pray for the relief against the State as hereinafter set forth in its prayer for relief.

## COUNT TEN—THE GOVERNOR'S ORDERS VIOLATE PLAINTIFFS' RIGHTS UNDER THE COMMERCE CLAUSE AND THE FIFTH AMENDMENTS' TAKINGS' CLAUSE

229.   Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1– 111 above.

230.   The Constitution of the United States reserves the sole and exclusive power of regulating commerce among the several states to the federal authority.

231.   The State of Maryland, under Governor Hogan's Orders, has sought to and has in fact unlawfully burdened and interposed his own purported authority over the commerce and businesses of the State of Maryland by closing those he deems non-essential and allowing to remain open those he deems essential, among other burdens.

232.   Under Governor Hogan's Orders, the Governor has unlawfully sought to interfere with the travel, transport and flow of corporate and private enterprise goods and services, including those which have nothing to do any health care concerns.

233.   Under Governor Hogan's Orders, the Governor has unlawfully used the Maryland National Guard to interpose the State's authority from the federal authority, preventing the

inspection and careful FDA approval and/or distribution of the COVID-19 test kits procured allegedly from South Korea, and this has caused a detriment to the public safety and violated the rights of Plaintiffs to the safe access to FDA approved medical treatments.

234. Additionally, under Governor Hogan's Orders, COVID-19 tests, medicines and treatments are being unlawfully rationed, withheld, prevented and denied to Plaintiffs.

235. Additionally, under Governor Hogan's Orders, Plaintiffs' businesses are being taken unlawfully in violation of the Constitution's Fifth Amendment takings clause, which prohibits the government from taking any thing or property of value from a citizen, without due process of law and just compensation.

236. Each of these harms are continuing and ongoing and a severe deprivation to Plaintiffs' rights and irreparable harm will result if injunctive relief is not provided by this court forthwith.

WHEREFORE, Plaintiffs respectfully pray for the relief against the State as hereinafter set forth in its prayer for relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

A. That the Court issue a Temporary Restraining Order restraining and enjoining Governor Larry Hogan, all State of Maryland officers, agents, employees, and attorneys, and all other persons, local authorities or their agents in active concert or participation with them, from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with the Governor's Orders or any other order to the extent any such order mandates confinement to one's home or property, mandates the wearing of face coverings to enter into commerce, prohibits religious worship services, or in- person church services at Plaintiffs' churches and places of worship if Plaintiff pastors and their congregations meet the social distancing, enhanced

101

sanitization, and personal hygiene guidelines pursuant to which the United States of America federal guidelines "Opening Up America" allows, that Delegates are provided safe passage to Annapolis and throughout anywhere in the State to make political speeches and to do the work of representation and meeting with constituents and members of the public free from threat or inferred threat of arrest. That Plaintiffs seek a TRO preventing Plaintiffs, Plaintiff pastors, and their congregants, members and attendees from being subject to criminal sanctions for having more than 10 people at its worship service on Sunday. That Plaintiff soldier and Marine and all residents and visitors of Maryland are provided the right to access health care even if deemed non-essential by the Governor, that they may walk and drive about unmolested, that they may participate in recreation, speech, assembly, worship in-person in church, going about and entering commerce without wearing a face covering or mask, and generally to be treated as citizens of the United States with all rights and privileges thereto restored to them under the Bill of Rights.  In making such a request, Plaintiffs seek to be treated equally with other businesses, establishments and persons, and seek to be permitted to meet without the 10- person limit as they will voluntarily abide by social distancing, enhanced sanitizing, and personal hygiene recommendations that other businesses are allowed to follow and remain open and that the federal government recommends from time to time.

B.     That the Court issue a Preliminary Injunction pending trial, and a Permanent Injunction upon judgment, restraining and enjoining Governor Hogan, all State officers, agents, employees, and attorneys, and all other local authorities or their agents, or persons in active concert or participation with any of them, from enforcing the Governor's Orders so that:

        i.     The State will not apply the Governor's Orders in any manner as to infringe Plaintiffs' constitutional and statutory rights by discriminating against their right to assembly, speech, free exercise of religion, equal protection, and all

other constitutional and statutory rights outlined herein;

ii.    The State will apply the Governor's Orders in a manner that treats Plaintiffs' businesses, activities and religious gatherings on equal terms as gatherings for or in so-called "essential" businesses and non-religious entities;

iii.    The State will cease issuing warnings, inferred threats and/or notices of potential or actual criminal violation to Plaintiffs, Plaintiff Pastors, or their members, and/or attendees; and

vii. The State will not bring any further enforcement, criminal, or other public health or safety actions against any Plaintiffs as threatened, or inferred as a threat, or noticed in any way, in Governor Hogan's public statements and statements and notices issued to Plaintiffs and in particular that Delegate Dan Cox and each other Plaintiff are hereby protected from any such targeting or orders by the Governor, and that they have the right of free passage to speak and assemble and protest the Governor's Orders, to go about commerce and business reopenings and to gather in religious worship in numbers that the religious authorities determine is safe and reasonable.

C.    That the Court render a Declaratory Judgment declaring that the Governor's Orders both on their face and as applied by the State are unconstitutional under the United States Constitution and Constitution of Maryland, and further declaring that:

i.    The State has violated Plaintiffs' rights to freedom of assembly by impermissibly prohibiting religious gatherings;

ii.    The State has violated Plaintiffs' rights to freedom of speech by impermissibly prohibiting political, commercial and religious gatherings;

iii.    The State has violated Plaintiffs pastors' and Plaintiffs' rights to free

exercise of religion by impermissibly prohibiting religious gatherings, substantially burdening their sincerely held religious beliefs, applying criteria that are neither neutral nor generally applicable to religious and non-religious gatherings, by establishing a religious gerrymander against religious gatherings, and by establishing a system of individualized exemptions that exclude similarly situated non-religious gatherings from the prohibitions applicable to Plaintiff pastors' religious gatherings;

iv.    The State has violated Plaintiffs' rights to equal protection of the laws by impermissibly prohibiting religious gatherings, and by applying criteria that treats religious gatherings in a discriminatory and dissimilar manner as that applied to various non-religious gatherings;

v.    The State has violated the Establishment Clause by impermissibly demonstrating hostility towards political gatherings, religious gatherings and small business gatherings and by impermissibly showing favoritism to certain non-religious gatherings, political gatherings sanctioned by the Governor, and business gatherings deemed essential;

vi.    The State has violated the Guarantee Clause by impermissibly exercising executive authority in an unconstitutional manner;

vii.    The State has violated Plaintiffs' rights under the Articles of the Declaration of Rights set forth hereinabove.

D.    That the Court award Plaintiffs nominal damages for the violation of Plaintiffs' constitutional rights.

E.    That the Court adjudge, decree, and declare the rights and other legal relations within the subject matter here in controversy so that such declaration shall have the full force and

effect of final judgment.

F.     That the Court retain jurisdiction over the matter for the purposes of enforcing the Court's order.

G.     That the Court declare Plaintiffs' are prevailing parties and award Plaintiffs the reasonable costs and expenses of this action, including, a reasonable attorney's fee, in accordance with 42 U.S.C. § 1988.

H.     That the Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully submitted,

/s/ Daniel L. Cox, Fed. Bar No28245
THE COX LAW CENTER, LLC
P.O. Box 545
Emmitsburg, MD 21727
Phone: 410-254-7000
Facsimile: 410-254-7220
E-mail: dcox@coxlawcenter.com
www.OldLineStateLawyers.com


John R. Garza, Fed. Bar No.01921
Garza Law Office, P.C.
Garza Building
17 S. Jefferson St.
Rockville, MD 20850

***Attorneys for Plaintiff***

Dated: May 2, 2020