**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ANTIETAM BATTLEFIELD KOA, *et al.* | * | |
| | * | Civil Action No. CCB-20-1130 |
| v. | * | |
| | * | |
| LAWRENCE J. HOGAN, *et al.* | * | |
| | * | |

**MEMORANDUM**

This action brought by citizens, business owners, and religious leaders is a challenge to the constitutionality of a series of executive orders issued by Maryland Governor Lawrence Hogan aimed at preventing the spread of COVID-19. The plaintiffs seek both declaratory relief and to enjoin the enforcement of these orders. The court has already denied the request for a preliminary injunction. *See Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214 (D. Md. 2020). Now pending before the court is the defendants' motion to dismiss the plaintiffs' amended complaint. (ECF 54). The matter has been fully briefed and no oral argument is necessary. *See* Local Rule 105(6). For the reasons discussed herein, the court will grant the defendants' motion.

**FACTS AND PROCEDURAL HISTORY**

This action was instituted on May 2, 2020. (ECF 1). The plaintiffs assert a number of claims under federal law for violations of: (1) the First Amendment's Free Exercise Clause; (2) the First Amendment's guarantee of the freedom of assembly; (3) the First Amendment's Free Speech Clause; (4) the First Amendment's Establishment Clause; (5) the Fourteenth Amendment's Equal Protection Clause; (6) Article IV's guarantee of a republican form of government; (7) the Commerce Clause; and (8) the Fifth Amendment's Takings Clause. In addition, the plaintiffs assert several violations of rights protected by the Maryland Constitution.

On May 20, 2020, this court denied the plaintiffs' request for a preliminary injunction, holding that the plaintiffs, with respect to their free exercise, free assembly, free speech, and

1

Commerce Clause claims, had not shown a likelihood of success on the merits.  *See generally Antietam Battlefield KOA*, 461 F. Supp. 3d 214.  Specifically, the court found that the plaintiffs failed to show that the Governor's executive orders[1] lacked a real or substantial relation to protecting public health and that they failed to show that the orders effected a plain and palpable invasion of their rights.  *See id*. at 242.

Since the plaintiffs' request for a preliminary injunction was denied, the plaintiffs have filed an amended complaint (ECF 50), which the defendants have moved to dismiss (ECF 54).  The amended complaint does not entail any substantive revisions, but merely removes a defendant, adds an attorney, and deletes an unnecessary reference to Virginia Governor Ralph Northam.  Accordingly, the court incorporates its previous memorandum opinion for a full recitation of the facts of this case and the applicable legal analysis.  Though the substance of the plaintiffs' claims has not changed, the public health context in which those claims arose has.  Since May, the number of positive cases in Maryland has risen to 167,656 and the number of deaths has risen to 4,160.[2]  After a more stable period in late summer and early fall, the state's positivity rate is now over six percent, with some counties reporting an even higher local rate.

---

[1] The restrictions about which the plaintiffs originally complained were relaxed as the public health crisis abated—and, unfortunately, may go back into effect as the threat to public health continues to worsen.  *See, e.g.*, Executive Order 20-05-06-01 (issued May 6, 2020); Executive Order 20-05-13-01 (issued May 13, 2020); Executive Order 20-06-03-01 (issued June 3, 2020); Executive Order 20-07-29-01 (issued July 29, 2020); Executive Order 20-11-10-01 (issued Nov. 10, 2020).  The frequent issuance of revised public health measures—tightening the restrictions as the severity of the crisis increases and loosening the restrictions as the severity of the crisis decreases—is indicative of narrow tailoring.

[2] This data is according to the Maryland Department of Health's Coronavirus Dashboard.  *See* Maryland Department of Health, Coronavirus Disease 2019 (COVID-19) Outbreak, http://coronavirus.maryland.gov (last accessed Nov. 16, 2020).

STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

DISCUSSION

This case concerns the "freedom of some and the public health of all." *Calvary Chapel San Jose v. Cody*, No. 20-cv-03794-BLF, 2020 WL 6508565, at *1 (N.D. Cal. Nov. 5, 2020).[3] The Supreme Court has explained that "[r]eal liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others." *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 26 (1905). Thus, when faced with a public health crisis, a state may implement measures—such as quarantine laws and public health orders—that

---

[3] Unpublished opinions are cited for the soundness of their reasoning and not for their precedential value.

3

give effect to the community's "right to protect itself against an epidemic of disease[.]" *Id.* at 27. Notably, though, this does not give governments an "absolute blank check for the exercise of government power[,]" *Robinson v. Attorney General*, 957 F.3d 1171, 1179 (11th Cir. 2020), as the police power of a state may be exercised in the form of "regulations so arbitrary and oppressive in particular cases, as to justify the interference of the courts to prevent wrong and oppression[,]" *Jacobson*, 197 U.S. at 38.

Though the Fourth Circuit Court of Appeals has not directly addressed the standard of review for constitutional claims challenging health orders during a pandemic, the Supreme Court in a recent plurality opinion invoked the *Jacobson* standard when denying an application for injunctive relief against California Governor Gavin Newsom's executive order aimed at limiting the spread of COVID-19, *see S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020), and other circuit courts have applied the framework from *Jacobson* in a similar context, *see*, *e.g.*, *Robinson*, 957 F.3d at 1179–80 (11th Cir. 2020); *In re Rutledge*, 956 F.3d 1018, 1027 (8th Cir. 2020); *Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913, 925–27 (6th Cir. 2020) (petition for certiorari filed); *In re Abbott*, 954 F.3d 772, 783–88 (5th Cir. 2020).[4] Because this case involves several constitutional challenges to a health order promulgated by the Governor in response to a public health crisis, the court will—consistent with its earlier analysis—apply *Jacobson* to determine whether the plaintiffs' constitutional claims survive the motion to dismiss.

To overturn the Governor's orders under *Jacobson*, then, a plaintiff must show either (1) that they have "no real or substantial relation" to protecting public health, or (2) that they are

---

[4] The court notes the existence of some contrary authority. In *Savage v. Mills*, for example, the District of Maine characterized *Jacobson* as "capacious precedent" and expressed its belief that *Jacobson* will not turn out to "be the Rosetta Stone for evaluating the merits of a challenge to any COVID-19-related government regulation." ___ F. Supp. 3d ___, No. 1:20-cv-00165-LEW, 2020 WL 4572314, at *5 (Aug. 7, 2020). And in *Calvary Chapel Dayton Valley v. Sisolak*, Justice Alito, writing in dissent and joined by Justices Thomas and Kavanaugh, expressed the view that the language in *Jacobson* is not the last word on what the Constitution allows public officials to do during the COVID-19 pandemic. 140 S. Ct. 2603, 2608 (2020). Nevertheless, the weight of authority suggests that—for now at least—*Jacobson* remains the proper framework.

"beyond all question, a plain, palpable invasion of rights secured by the fundamental law." 197 U.S. at 31. The Constitution, Chief Justice Roberts has reiterated, entrusts "'[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'" *S. Bay United Pentecostal Church*, 140 S. Ct. at 1613 (citing *Jacobson*, 197 U.S. at 38). "When those officials 'undertake[ ] to act in areas fraught with medical and scientific uncertainties,' their latitude 'must be especially broad.'" *Id.* (citing *Marshall v. United States*, 414 U.S. 417, 427 (1974)). Accordingly, courts are not to "second-guess the wisdom or efficacy" of public health measures lest they usurp the functions of the politically accountable branches. *In re Abbott*, 954 F.3d at 785. Still, "to prevent misapprehension of our views," it is worth reiterating that the court has a duty to "give effect to the Constitution" and prevent "wrong and oppression" where the state enacts regulations that are "arbitrary and oppressive." *Jacobson*, 197 U.S. at 31, 38. In short, a pandemic does not present the government with a "blank check" to deny constitutional rights. *Robinson*, 957 F.3d at 1179.

As to the first *Jacobson* test, the plaintiffs have not plausibly alleged that there is no real and substantial relationship between the Governor's orders and the public health; instead, as the court stated previously, it is "clear that the Governor's orders have at least a real and substantial relation to protecting public health." *Antietam Battlefield KOA*, 461 F. Supp. 3d at 230. The stated objective of the Governor's executive order was "[t]o reduce the spread of COVID-19" and "to protect and save lives[.]" Executive Order 20-03-30-01 ("EO").[5] The Governor chose to achieve this goal by, among other measures, imposing restrictions on the size of indoor gatherings and imposing a stay-at-home order. Because these limitations restrict in-person contact, they are

---

[5] The amended complaint lacks specificity as to which of the Governor's executive orders are actually being challenged. The amended complaint generally refers to the Governor's orders in a collective sense without distinguishing between them, except where the plaintiffs make one reference to the effect of the Governor's March 30 Executive Order (No. 20-03-30-01) on plaintiff Antietam Battlefield KOA. The court will therefore rely on the March 30 order but will reference the Governor's other orders where appropriate.

5

substantially related to the objective of preventing the spread of COVID-19.  The plaintiffs allege in their amended complaint and in their opposition that less restrictive measures are available to Governor Hogan and that it is unequal treatment to designate some businesses—but not theirs—as essential.  But alleging that an order goes too far in protecting public health is not the same as pleading that an order has no real and substantial relation to protecting public health.  Thus, the plaintiffs have failed to plead allegations sufficient to satisfy the first test under *Jacobson*.[6]

If their amended complaint is to survive the motion to dismiss, then, it must do so under the second *Jacobson* test by plausibly alleging that the order involves, "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." 197 U.S. at 31.  Though courts "have not yet defined the precise contours of this standard, it plainly puts a thumb on the scale in favor of upholding state and local officials' emergency public health responses." *Professional Beauty Fed. of Cal.*, 2020 WL 3056126, at *7 (internal quotation omitted).  With respect to the plaintiffs' free exercise, free assembly, free speech, and Commerce Clause claims, the court has already explained that those claims were unlikely to succeed on the merits. *See Antietam Battlefield KOA*, 461 F. Supp. 3d at 230.  As the court previously noted, the Governor's executive orders are neutral and generally applicable, and "rationally related to the legitimate government interest of reducing the spread of COVID-19[.]" *Id*. at 231, 233.  Further, the court stated that the Governor's orders constituted "time, place, and manner restriction[s]" which were likely to pass muster as they were "narrow[ly] tailor[ed]" and "le[ft] open ample alternative channels for communication[.]" *Id*. at 235, 236.  Finally, the court held that the Governor's order was "not facially discriminatory against

---

[6] Cases reviewing orders substantially similar to the one at issue here have reached the same conclusion.  *See, e.g., Tigges v. Northam*, ___ F. Supp. 3d. ___, No. 3:20-cv-410, 2020 WL 4197610, at *7 (E.D. Va. July 21, 2020); *Calvary Chapel of Bangor v. Mills*, 459 F. Supp. 3d 273, 284 (D. Me. 2020); *Williams v. Trump*, No. C 2495, 2020 WL 6118560, at *4 (N.D. Ill. Oct. 16, 2020); *Lewis v. Walz*, No. 20-1212, 2020 WL 5820549, at *5 (D. Minn. Sept. 30, 2020); *Professional Beauty Fed. of Cal. v. Newsom*, No. 2:20-cv-04275-RGK-AS, 2020 WL 3056126, at *6 (C.D. Cal. June 8, 2020).  Nothing in the plaintiffs' amended complaint supports a finding to the contrary.

interstate commerce" and the plaintiffs had not "present[ed] any evidence that the order has a discriminatory purpose or effect." *Id*. at 239.  Nothing in the plaintiffs' amended complaint—which, again, contains no substantive revisions—changes this analysis.  Accordingly, the court concludes that the plaintiffs have not plausibly alleged a plain and palpable violation of their rights to free speech, free assembly, or free exercise; nor have they plausibly alleged a plain and palpable violation of the Commerce Clause.

What remains, then, are the plaintiffs' claims under the Establishment Clause, the Equal Protection Clause, the Takings Clause, and Article IV, and some of the claims under the Maryland Constitution.[7]  The court will proceed to examine each of these remaining claims to determine whether a plain, palpable invasion of rights has been plausibly alleged.

**I.     Establishment Claim**

The First Amendment prohibits governments from making any law "respecting an establishment of religion[.]"  U.S. Const. amend. I.  The "clearest command" of this provision is that "one religious denomination cannot be officially preferred over another," *Trump v. Hawaii*, 138 S. Ct. 2392, 2417 (2018), nor can the government prefer religion over nonreligion, *McCreary Cty., Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 860 (2005).  An Establishment Clause claim will fail under the familiar *Lemon v. Kurtzman* test if the government action (1) has a secular purpose, (2) has a principal or primary effect that neither advances nor inhibits religion, and (3) does not foster an excessive government entanglement with religion.  403 U.S. 602, 612–13 (1971); *see also Mellen v. Bunting*, 327 F.3d 355, 367 (4th Cir. 2003).  Here, though plaintiffs do provide a rote recitation of the standard for an establishment claim and conclusory allegations that the

---

[7] The plaintiffs bring facial and as-applied challenges.  "[C]lassifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy,' but it does not speak at all to the substantive rule of law necessary to establish a constitutional violation." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019) (citation omitted).

Governor is displaying "impermissible hostility towards religious gatherings[,]" and is showing "favoritism towards non-religious gatherings[,]" (ECF 50, Am. Compl., ¶¶ 165, 166), the plain terms of the challenged order show that gatherings of more than ten people are prohibited at "*all locations and venues*[.]"[8] In sum, none of the allegations in the amended complaint are sufficient to demonstrate a plain and palpable violation of the plaintiffs' rights under the Establishment Clause. Accordingly, the plaintiffs' establishment claim will be dismissed.

## II. Equal Protection Claim

The plaintiffs allege that the Governor's orders offend their right to equal protection because they "permit the State to treat Plaintiffs differently from other similarly situated political, business[] and non-religious entities" insofar as the orders designate Lowes and Walmart as essential business and permit them "to have hundreds of cars and people[.]" (ECF 50 ¶¶ 95, 176). "The [Equal Protection] Clause requires that similarly-situated individuals be treated alike." *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). To state an equal protection claim, a plaintiff must demonstrate that he has been treated differently from others similarly situated and that the unequal treatment was the result of purposeful discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Lowes and Walmart, where people "neither congregate in large groups nor remain in close proximity for extended periods[,]" are not similarly situated to religious institutions, where "large groups of people gather in close proximity for extended periods of time." *S. Bay Pentecostal Church*, 140 S. Ct. at 1613. Thus, despite the plaintiffs' allegations to the contrary, it cannot plausibly be deduced from the amended complaint and the executive orders that businesses such as

---

[8] And—because the plaintiffs complain of all of the Governor's orders collectively—the court notes that subsequent orders relaxed the mandates established in the March 30 order, permitting, for example, religious facilities to operate at fifty percent capacity, which is the same ceiling set for retail establishments. *See* Executive Order 20-05-27-01 (issued May 27, 2020).

Lowes and Walmart are similarly situated to the religious institutions led by the plaintiff-pastors, or that the state's distinctions are being drawn on any basis other than the risk posed to the public health.

Additionally, if conduct arguably offends two constitutional provisions, one of which provides a more specific protection against that conduct, then ordinarily the more specific provision should be used to resolve the claim. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). The substance of the plaintiffs' equal protection claims, which complain of barriers to the exercise of their religion and which do not reference a specific suspect classification, are properly analyzed as a free exercise claim, which the court has already resolved in favor of the defendants. The plaintiffs' equal protection claim accordingly will be dismissed.

### III. Article IV Claim

The plaintiffs contend the Governor's orders "deprive them of the right to select their own government administration, pass their own laws, and maintain a government administration directly responsible to the people" in violation of Article IV's Guarantee Clause. (ECF 50 ¶ 188). Article IV "guarantee[s] to every State in [the] Union a Republican Form of Government[.]" U.S. Const. art. IV § 4. The Supreme Court has concluded, however, "that the Guarantee Clause does not provide the basis for a justiciable controversy." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2506 (citing *Pac. States Telephone & Telegraph Co. v. Oregon*, 223 U.S. 118 (1912)). Accordingly, the plaintiffs' Article IV claim will be dismissed.

### IV. Takings Claim

The plaintiffs claim that "under Governor Hogan's Orders, Plaintiffs' businesses are being taken unlawfully in violation of the Constitution's Fifth Amendment takings clause[.]" (ECF 50 ¶ 235). Despite the foregoing language, the court does not read the amended complaint literally to assert a physical occupation or seizure of the plaintiffs' real property. Instead, the plaintiff

9

business-owners appear to primarily complain of lost revenue they believe resulted from the Governor's orders. Specifically, Adventure Park USA[9] alleges that it lost $700,000 in revenue and Antietam Battlefield alleges a loss of $50,000. (ECF 50 ¶¶ 23, 24). The Fifth Amendment provides that private property shall not be taken for public use, without just compensation. To state a takings claim, though, "it is not enough to allege that government conduct frustrated a business enterprise," as the plaintiffs here appear to allege. *Savage v. Mills*, ___ F. Supp. 3d ____, 2020 WL 4572314, at * 9 (D. Me. 2020). Instead, the Fifth Amendment is directed at government conduct that takes private property or that "denies the beneficial use of property, including legal interests in real or personal property, not the liberty interest to engage in business activity." *Id.*; *see also Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) ("The assets of a business . . . unquestionably are property, and any state taking of those assets is unquestionably a 'deprivation' under the Fourteenth Amendment. But business in the sense of *the activity of doing business*, or *the activity of making a profit* is not property in the ordinary sense[.]"). The court cannot determine from the amended complaint what property, if any, was alleged to have been taken by the government. The plaintiffs make no concrete allegations that personal property associated with their business was effectively taken from them. Nor have they demonstrated that the inability to sell goods and provide services for a limited period of time can, as a matter of law, constitute a taking of their property. *See id*. Accordingly, their Fifth Amendment takings claim will be dismissed.

---

[9] Adventure Park USA was voluntarily dismissed from this action on July 2, 2020. (*See* ECF 64, Marginal Order Approving Notice of Voluntary Dismissal).

## V.     State Constitutional Claims

The plaintiffs' claims under the Maryland Constitution are barred by the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (holding that a federal court may not grant relief against state officials on the basis of state law).  The court therefore cannot conclude that the executive order is "beyond all question, a plain, palpable invasion" of plaintiffs' state-law rights.  *Jacobson*, 197 U.S. at 31.  Accordingly, the court will also dismiss the plaintiffs' state law claims.

## CONCLUSION

*Jacobson* holds that it is not the role of the judiciary to second-guess policy choices favoring one reasonable method of preventing the spread of a disease over another, which is precisely what the plaintiffs request this court to do.  Reasonable people, including informed government and public health officials, may debate whether the Governor's orders at any moment go too far, or not far enough, in protecting the public from this deadly pandemic.  But, based on the allegations in the plaintiffs' amended complaint, the court cannot conclude that Governor Hogan's measures are arbitrary or unreasonable, or that they plainly violate any of the plaintiffs' constitutional rights.  The court therefore must be cautious not to "usurp the functions of another branch of government" in deciding how best to protect public health.  *Jacobson*, 197 U.S. at 28.  Accordingly, the defendants' motion to dismiss will be granted.  A separate order follows.

  11/18/20                                                                              /S/
Date                                                                      Catherine C. Blake
                                                                          United States District Judge

11